```
                IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF MARYLAND
```

COSTAR GROUP, INC. et al.       :

                                :

v.                              :   Civil Action No. DKC 99-2983

                                :

LOOPNET, INC. et al.

                                :

## MEMORANDUM OPINION

Pending before the court in this copyright infringement action are 1) Defendant De Andre's motion to dismiss for lack of personal jurisdiction and 2) Plaintiffs' motion to compel the deposition testimony of Defendant De Andre and for expenses. The issues have been fully briefed, and no hearing is deemed necessary. Local Rule 105.6. For the reasons that follow, the court will GRANT the motion to compel and for expenses, and will defer ruling on the motion to dismiss.

## I. Background

Plaintiffs, CoStar Group, Inc. and CoStar Realty Information, Inc. (collectively "CoStar"), are in the business of creating, producing and distributing databases containing copyrighted photographs and descriptions of commercial real estate throughout the United States, including Maryland. Defendant LoopNet, Inc., a California corporation with its principal place of business in San Francisco, operates an internet website that is accessible to Maryland residents and contains photographs of and information on



commercial properties located in Maryland.  Plaintiffs allege that LoopNet has unlawfully reproduced and distributed their copyrighted photographs on LoopNet's website, and asserts claims against LoopNet for direct and contributory copyright infringement. Plaintiffs further allege that Defendant Dennis De Andre, chief executive officer of LoopNet and a resident of California, is vicariously liable for LoopNet's infringement because he had the "the right and ability to supervise and control the uploading of photographs from CoStar's databases onto LoopNets's website," and had a direct financial interest in the infringing activity. Plaintiffs have also asserted claims for violation of the Lanham Act, common law unfair competition, intentional interference with business relations, and unjust enrichment.  Defendant De Andre moved to dismiss for lack of personal jurisdiction shortly after the filing of the complaint.

## II.  Analysis

Determining the existence of personal jurisdiction is a two step process: first, the court must determine whether jurisdiction is authorized by Maryland's long-arm statute;[1] if so, the court

---

[1] Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103, provides that a court may exercise personal jurisdiction over a person, who directly or by agent:

> (b)(1) Transacts any business or performs any character of work or service in the State;
> (b)(2) Contracts to supply goods, food, services, or manufactured products in the
> (continued...)

2

then determines whether the exercise of jurisdiction comports with due process standards. *Ellicot Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). De Andre's primary argument against the exercise of jurisdiction over him is the "fiduciary shield" doctrine, under which "'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity.'" *Columbia Briargate Co. v. First Nat'l Bank*, 713 F.2d 1052, 1055 (4th Cir. 1983) (quoting *Bulova Watch Co. v. K. Hattori & Co.*, 508 F. Supp. 1322, 1347 (E.D.N.Y. 1981)). The fiduciary shield doctrine is not a constitutional limitation, but rather derives from the interpretation of state long-arm statutes, and does not apply when

---

[1](...continued)
State;
(b)(3) Causes tortious injury in the State by an act or omission in the State;
(b)(4) Causes tortious injury in the State or outside of the state by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;
(b)(5) Has an interest in, uses, or possesses real property in the State; or
(b)(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Cts. & Jud. Proc. § 6-104(b).

the forum state's long-arm statute is coextensive with the full reach of due process. *See Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 525 (4th Cir. 1987) (citing *Columbia Briargate*, 713 F.2d at 1064). De Andre recognizes this limitation of the doctrine, but argues the doctrine applies in this case because subsection (b)(4) of Maryland's long-arm statute, which De Andre asserts is the only plausible basis for asserting jurisdiction over him in Maryland, does not extend to the limits of due process.

In support of this argument, De Andre cites *Copiers Typewriters Calculators, Inc. v. Toshiba Corp.*, 576 F. Supp. 312 (D. Md. 1983), which held that "[s]ubsections (b)(3) and (b)(4) [of the Maryland long-arm statute] were intended by the legislature to allow the exercise of personal jurisdiction within more narrow limits than the Due Process Clause would tolerate." *Id.* at 318 (citing *Craig v. General Finance Corp.*, 504 F. Supp. 1033, 1036 (D. Md. 1981)); *see also Zeman v. Lotus Heart, Inc.*, 717 F. Supp. 373, 375 (D. Md. 1989) ("The justification of jurisdiction under §§ (b)(3) and (b)(4) does permit the fiduciary shield doctrine to come into play, because those sections are not interpreted to the full extent allowed by the Constitution."). *But see Baker & Kerr, Inc. v. Brennan*, 26 F. Supp. 2d 767, 769 (D. Md. 1998) (holding that subsection(b)(4) extends to the limits of due process); *Rossetti v. Esselte-Pendeflex Corp.*, 683 F. Supp. 532, 534 (D. Md. 1988) ("The

4

scope of that section [(b)(4)] of Maryland's long-arm statute is coextensive with the limits imposed by the due process clause of the Fourteenth Amendment." (citing *Mohamed v. Michael*, 279 Md. 653, 657, 370 A.2d 551 (1977); *Geelhoed v. Jensen*, 277 Md. 220, 225-27, 352 A.2d 818 (1976))). Of course, when interpreting the reach of the Maryland long-arm statute, this court is bound by the interpretations of the Maryland Court of Appeals, *Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 61 (4th Cir. 1993), which has repeatedly stated, without qualification, that "the purpose of the Maryland Long Arm Statute is to permit a Maryland court to exercise jurisdiction over the person to the full extent authorized by the Due Process Clause of the Fourteenth Amendment." *Hansford v. District of Columbia*, 329 Md. 112, 128 n.7, 617 A.2d 1057, 1064 n.7 (1993) (citations omitted); *see also Androutsos v. Fairfax Hosp.*, 323 Md. 634, 637, 594 A.2d 574, 575-76 (1991) (stating that the purpose of subsection (b)(4) of the long-arm statute was to extend the scope of jurisdiction over nonresident defendants to the limits of due process (citing *Camelback Ski Corp. v. Behning*, 307 Md. 270, 274, 513 A.2d 874, 876 (1986))). Thus, the fiduciary shield doctrine has no application in this case.

When, as here, a state's long-arm statute permits jurisdiction to the limits permitted by federal due process, the normal two-step process for determining the existence of jurisdiction merges into one, *Ellicot Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474,

5

477 (4th Cir. 1993), and the only question is whether the exercise of jurisdiction comports with due process. Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident defendant that has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, (1940)). The crucial issue is whether the defendant's contacts with the forum state are substantial enough that he reasonably could "expect to be haled before a [Maryland] court." *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977). A defendant has fair warning that he might be subject to a forum's jurisdiction if he purposefully directs his activities at forum residents and "the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). It is not necessary that the defendant ever actually enter the forum state's territory; so long as the defendant has purposefully directed his activities toward the forum state, and the litigation arises from those activities, due process is satisfied. *Id.* at 476 ("[W]e have consistently rejected the

notion that an absence of physical contacts can defeat personal jurisdiction." (citing *Keeton,* 465 U.S. at 774-75)).

With regard to jurisdiction over corporate employees, the Supreme Court has made clear that the employee's contacts are not to be judged by the corporation's activities in the forum; rather, the court must look at the degree to which the employee personally participated in the alleged wrongdoing. *Calder v. Jones*, 465 U.S. 783, 790 (1984) (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)). In *Calder*, entertainer Shirley Jones brought an action in California against the author and editor of an allegedly libelous article published by their employer in a tabloid magazine. The article alleged that Jones had a problem with alcohol that prevented her from fulfilling her professional obligations. The author of the article did most of his research in Florida, relying on phone calls to California for information. The editor reviewed and approved the subject of the article and edited drafts to its final form, but had no other relevant contacts with California. Both defendants, residents of Florida, moved to dismiss for lack of personal jurisdiction.

The Court found the exercise of personal jurisdiction by a California court proper. The Court stated:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional

7

> distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.
> . . . .
> Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under these circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.

*Calder*, 465 U.S. at 788-90. *Calder* employed an "effects test," under which a court may exercise personal jurisdiction over a nonresident defendant who acts outside the forum state to cause an effect upon the plaintiff within the forum state. The *Calder* court held that the magazine employees were subject to jurisdiction in California because they personally participated in wrongdoing that had an effect there. *Id.* at 790.

Thus, under *Calder,* whether De Andre had a personal connection with the torts alleged in the complaint is highly relevant to whether this court can exercise personal jurisdiction over him. However, De Andre's counsel has prevented plaintiffs from discovering the extent to which he may have personally participated

8

in the infringing activity alleged in the complaint. At his deposition, De Andre's counsel refused to let him answer highly relevant questions such as "[D]o you have the right to approve decisions related to LoopNet's copyright policy?", and questions relating to his knowledge that infringing photographs were on the LoopNet website. In all, De Andre's counsel interposed no less than 125 instructions not to answer because the question asked was "beyond the scope of the deposition." Ultimately, the following exchange between counsel ensued:

> [Plaintiffs' counsel]: Have you had any involvement in the removal of any photographs from LoopNet's site that Costar has claimed it owns the copyright in?
> [De Andre's counsel]: Objection; beyond the scope of the deposition. I instruct the witness not to answer.
> [Plaintiffs' counsel]: Counsel, it may save some time, are you not going to allow the witness to answer any questions about his personal involvement in anything related to the alleged infringing activity in the suit?
> [De Andre's counsel]: How does that relate to whether he has sufficient contact with the state of Maryland?
> [Plaintiffs' counsel]: Because the basis of liability is vicarious and contributory liability.
> [De Andre's counsel]: That's a liability issue, it's not a jurisdictional issue.
> [Plaintiffs' counsel]: That is not correct.
> [De Andre's counsel]: Yes, it is correct. You can sue him in California and you'd have personal jurisdiction over him. It's jurisdiction. Do you understand what jurisdiction is versus liability?
> [Plaintiffs' counsel]: I'm not sure you do, but I do.
> [De Andre's counsel]: I absolutely do.

9

> [Plaintiffs' counsel]: I think I'm well acquainted with it. My only question to you is - and I'll be happy to ask all the questions, if that's what you prefer - is to say are you not going to allow him to answer any questions related to his personal involvement in the activities related to the actions alleged to be infringing in this case?
> [De Andre's counsel]: Can we just take a two-minute break --
> [Plaintiffs' counsel]: Sure.
> [De Andre's counsel]: -- so I can confer with co-counsel.
> (Witness and counsel leave room)
> [De Andre's counsel]: I'm sorry, counsel, can you repeat your last question? I believe it was to me.
> [Plaintiffs' counsel]: To save time, are you going to instruct the witness not to answer any questions about his personal involvement relating to the activities alleged to be infringing?
> [De Andre's counsel]: Yes; because I don't perceive those questions to have any relationship to the subject of personal jurisdiction. They seem to go straight to liability, which is premature at this point.
> [Plaintiffs' counsel]: Well, then I won't ask those questions and we'll simply take it up with the court.
> [De Andre's counsel]: However, I will allow any questions that relate to his contact with the state of Maryland. I mean, I want to be clear about that.
> [Plaintiffs' counsel]: Infringing activities relate to the state of Maryland.
> [De Andre's counsel]: Maybe or maybe not, but Mr. De Andre has not been established to have any personal involvement in any of that.

From this exchange, it is apparent the De Andre's counsel in fact does not understand that De Andre's personal involvement in the alleged infringing activity is critical to a determination of whether he has sufficient contacts with this forum.

10

The court will therefore GRANT Plaintiffs' motion to compel and Order that De Andre submit to another deposition, at his counsel's expense, on the issue of personal jurisdiction. Plaintiffs will be permitted to inquire into the foundation of De Andre's activities as President and CEO of LoopNet and his role in its activities, De Andre's activities related to LoopNet's contacts with Maryland, De Andre's role in the alleged infringing activities, and all matters reasonably related thereto. The court will defer ruling on the motion to dismiss until De Andre's deposition has concluded and the parties have submitted additional briefing on the issue.

The court is ordering De Andre's counsel to pay the costs and attorney's fees associated with retaking De Andre's deposition pursuant to Rule 30(d)(2).[2] De Andre's counsel has flagrantly violated the Rules of Procedure and this Court's Discovery

---

[2] Rule 30(d)(2) provides:

> By order or local rule, the court may limit the time permitted for the conduct of a deposition, but shall allow additional time consistent with Rule 26(b)(2) if needed for a fair examination of the deponent or if the deponent or another party impedes or delays the examination. If the court finds such an impediment, delay, or other conduct that has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof.

Guidelines, and has thereby impeded and frustrated the fair examination of De Andre. Rule 30(d)(1) plainly sets forth the very limited circumstances under which an instruction to a deponent not to answer is appropriate:

> A party may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation on evidence directed by the court, or to present a motion [for protective order] under paragraph (3).

Fed. R. Civ. P. 30(d)(1). In addition, this court's Discovery Guidelines provide that "[i]t is presumptively improper to instruct a witness not to answer a question during the taking of a deposition unless under the circumstances permitted by Fed. R. Civ. P. 30(d)(1)." Guideline 5(d). Despite these unambiguous proscriptions on instructions not to answer, De Andre's counsel instructed him approximately 125 times not to answer a question during the course of his deposition. That counsel believed the questions to be "beyond the scope of the deposition" is not justification for counsel's actions. It is not counsel's role to make unilateral determinations of what is relevant to the issue of personal jurisdiction. The Rules provide a procedure for invoking the protections of the court when counsel believes the permissible bounds of discovery have been exceeded. Counsel made no attempt to comply with those procedures. Such misconduct will not be tolerated by this court.

12

Finally, pursuant to Rule 37(a)(4), the court will Order counsel to pay the reasonable costs and attorney's fees incurred by Plaintiffs in bringing the motion to compel.

A separate Order will be entered.

_____
DEBORAH K. CHASANOW
United States District Judge

February 10, 2000.

13